[Cite as *Eric Petroleum Corp. v. Ascent Resources-Utica, L.L.C.*, 2024-Ohio-5019.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## COLUMBIANA COUNTY

ERIC PETROLEUM CORPORATION ET AL.,

Plaintiffs-Appellants,

v.

ASCENT RESOURCES-UTICA, LLC ET AL.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 23 CO 0055**

---

Civil Appeal from the
Court of Common Pleas of Columbiana County, Ohio
Case No. 2019 CV 536

**BEFORE:**
Cheryl L. Waite, Carol Ann Robb, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. James M. Wherley, Jr. and Atty. Randolph L. Snow,* Black, McCuskey, Souers & Arbaugh, for Plaintiffs-Appellants Eric Petroleum Corporation and Eric Petroleum Utica, LLC

*Atty. Kevin L. Colosimo and Atty. Christopher W. Rogers,* Frost Brown Todd, LLC, for Defendant-Appellee Ascent Resources-Utica, LLC

*Atty. Justin H. Werner*, Reed Smith LLP, for Defendant-Appellee Chesapeake Exploration, LLC

*Atty. Timothy B. McGranor, Atty. Gregory D. Russell*, and *Atty. Matthew D. Fazekas*, Vorys, Sater, Seymour & Pease LLP, for Defendant-Appellee EAP Ohio, LLC

Dated: October 7, 2024

_____

**WAITE, J.**

{¶1} Appellants Eric Petroleum Corporation and Eric Petroleum Utica LLC ("Appellants") appeal a November 27, 2023 decision of the Columbiana County Court of Common Pleas granting Appellees' Chesapeake Exploration, LLC, EAP Ohio, LLC, and Ascent Resources-Utica, LLC, motion to compel arbitration and stay the matter pending arbitration. On appeal for the second time in this matter, Appellants argue that a choice-of-law provision within the parties' agreement dictates that disputes will be governed according to state law, thus the trial court's decision to send the claims to arbitration in accordance with the Federal Arbitration Association ("FAA") was in error. Appellants further argue that, according to state law, claims that involve the determination of real property rights are reserved for a judicial forum, not arbitration. For the reasons that follow, Appellants' arguments are without merit and the judgment of the trial court is affirmed.

<u>Factual and Procedural History</u>

{¶2} As this case has previously been before this Court, in the interest of judicial economy, the facts are taken from the earlier case.

This appeal concerns an arbitration provision within an agreement called the Asset Sale Agreement ("ASA"). However, the matter as a whole involves the drilling rights pertaining to approximately 50,000 acres of land subject to oil and gas leases in Belmont, Carroll, Columbiana, Harrison, and

<u>Case No. 23 CO 0055</u>

Jefferson Counties. Appellants own an interest in the shallow drilling rights, which are not at issue, here. Appellants initially assigned the deep-drilling rights to Ohio Buckeye Energy, LLC. Buckeye Energy is the predecessor to Chesapeake, which later obtained these interests.

In 2018, Chesapeake explored the idea of disposing of their Ohio oil and gas interests. In August of 2018, Chesapeake entered into an agreement with Appellee EAP Ohio accomplishing that goal. However, Section 14.10 of the ASA prohibited either party from assigning their interests without the written consent of the other party. In accordance with the ASA, Chesapeake sought permission to assign its interest to EAP Ohio from Appellants. However, Appellants had concerns about the assignment and declined to provide written consent. Despite this denial, Chesapeake assigned its deep-drilling rights to EAP Ohio, which in turn assigned some of the interests to Appellee Ascent.

The exact timeframe is not specified within the record, however, deep drilling commenced apparently sometime in 2018. It is equally unclear if Chesapeake or EAP Ohio/Ascent first commenced drilling. Regardless, it appears that deep-drilling efforts had begun on at least 370 wells by late 2019. An unknown number of permits had been issued to commence deep-drilling on additional properties. EAP Ohio/Ascent sent Appellants millions of dollars in profit, however, it appears that Appellants did not deposit these checks.

Instead, Appellants protested the assignments. Given that the remedy for unauthorized assignments is invalidation of those assignments, Appellants filed a complaint against Chesapeake, EAP Ohio, and Ascent on November 4, 2019. While other defendants were named to the complaint, those defendants are not involved in this appeal.

Counts one through three of the complaint sought a declaration of judgment invalidating the assignments due to a violation of the assignment clause. Count four involves a clause of the ASA which addresses participation rights pertaining to certain wells. Counts five through seven assert breach of contract claims. Count eight sought quiet title due to the allegedly invalid assignments.

Counts nine and ten sought injunctive relief against EAP Ohio and Ascent during the pendency of litigation.

We note that although EAP Ohio and Ascent have the same general defense as Chesapeake, EAP Ohio and Ascent's arguments differed from Chesapeake's in one regard. Chesapeake asserted that the ASA did not require written consent in this instance. EAP Ohio and Ascent argue that the ASA does not apply to them, as they did not receive any assignment pursuant to that agreement.

On December 4, 2019, Appellees filed a motion for a preliminary injunction and the trial court scheduled a hearing for January 8, 2020. The

hearing was continued. On January 9, and January 13, 2020, Appellees filed a motion to compel arbitration and a motion to stay the proceedings pending arbitration. The timeline of the motions is relevant to this appeal.

Ascent filed a motion to stay the proceedings pending arbitration on January 9, 2020. Ascent did not file a motion to compel arbitration. Then, on January 13, 2020, Chesapeake filed both a motion to compel arbitration and a motion to stay the proceedings pending appeal. On January 21, 2020, EAP Ohio filed a motion to join the motions filed by Ascent and Chesapeake.

The court rescheduled the preliminary injunction hearing and scheduled a hearing on March 22, 2020 to include the arbitration motions. The hearing was again continued and rescheduled for August 19, 2020. However, on July 6, 2020, Chesapeake filed for bankruptcy and the case was subsequently stayed.

The bankruptcy stay was terminated on August 19, 2021. Thereafter, the court asked the parties to brief the issue of whether the previously scheduled hearings were required to be rescheduled. On October 22, 2021, the court deemed any hearing unnecessary, as the parties had been adequately heard through their motions. The court denied the preliminary injunction, granted Appellees' motion to compel arbitration, and stayed the matter pending arbitration. The court determined that the quiet title action was exempt from arbitration but stayed that claim pending arbitration.

*Eric Petroleum Corp. v. Ascent Resources-Utica*, LLC, 2022-Ohio-3619, ¶ 2-10, (7th Dist.), reconsideration denied, 2022-Ohio-4817, ¶ 2-10, (7th Dist.).

{¶3}   We held that the arguments related to the preliminary injunction did not involve a final appealable order.   Further, we declined to address the substantive arguments centered on the applicability of the FAA or the Ohio Arbitration Association ("OAA") because "Appellants' request for a hearing pursuant to R.C. 2711.03 was properly asserted and must be granted.   The parties' arguments regarding the merits of this matter are premature in this regard."  *Id.* at ¶ 38.  Thus, the matter was reversed for the sole purpose of holding the hearing requested by Appellants.

{¶4}   Thereafter, Appellants filed a motion for reconsideration of our opinion.  In that motion, Appellants argued that we made substantive findings in our Opinion even though ultimately we found it was premature to address the substantive arguments. Because we determined our opinion clearly limited itself to procedural matters, we overruled the reconsideration motion.  *Eric Petroleum Corp. v. Ascent Resources-Utica, LLC,* 2022-Ohio-4817, ¶ 6 (7th Dist.) ("*Eric Petroleum I*").

{¶5}   Five months later, on May 3, 2023, the trial court held a hearing in accordance with our remand.  Six months later, on November 27, 2023, the trial court reiterated its earlier findings and granted the motion to compel arbitration pursuant to the FAA.  However, the court did change course and reversed itself as to the declaratory judgment, and found it had earlier erred when it stayed that claim pursuant to R.C. 2711.01(B)(1) pending arbitration, and instead, incorporated the declaratory judgment claim into the other claims appropriate for arbitration.  It is from this entry that Appellants timely appeal.

Case No. 23 CO 0055

ASA

**{¶6}** The dispute at issue centers on the interpretation of an agreement created and signed by the parties. For ease of understanding the issues facing this Court, that document will be briefly discussed. The following provisions of the ASA are at issue, here.

**{¶7}** The first provision is titled "Section 13 Arbitration." In relevant part, this section provides:

> Any dispute under this Agreement (other than disputes regarding Title Defects, Excess Net Mineral Acres and Environmental Defects which will be handled in accordance with Section 2.1.8, and timely payment of the Purchase Price in accordance with Section 2) will be submitted to binding arbitration in Cleveland, Ohio in accordance with the Commercial Arbitration Rules of the American Arbitration Association, except that there will be one arbitrator selected by the Seller, one arbitrator selected by the Buyer and a third arbitrator selected by those two arbitrators. . . Unless otherwise expressly set forth in this Agreement, the procedures specified in Section 2.1.8 and this Section 13 will be the sole and exclusive procedures of the resolution of disputes.

(ASA, p. 29.)

**{¶8}** Section 2.1.8, referenced within Section 13, provides that if the parties disagree about a title defect, excess net mineral acres, or an environmental defect, they are to "submit the dispute to arbitration as provided in this Section. The matter to be

arbitrated shall be assigned to a title attorney in the state where the affected Property is located . . ." (ASA, p. 11.) While arbitration is referred to within the provision, it is irrelevant to the current matter as there is no dispute regarding title defect, excess net mineral acres, or environmental defect at issue.

**{¶9}** The final two clauses are found within a section titled "Miscellaneous." The first is Section 14.7 and is titled "Choice of Law." The clause simply provides: "This Agreement will be interpreted, construed and enforced in accordance with the laws of the State of Ohio." (ASA, p. 31.)

**{¶10}** Section 14.10 is titled "Assignment":

> It is agreed that neither Party may assign such Party's rights nor delegate such Party's duties under this Agreement without the express written consent of the other Party to this Agreement provided that Buyer shall be entitled to assign its rights and obligations under this Agreement to an Affiliate, but in such event the Buyer shall not be relieved of any liability to Seller under this Agreement.

(ASA, p. 31.)

**{¶11}** As these sections are crucial to the analysis of this case, they will be repeated when necessary herein.

Standard of Review

**{¶12}** A trial court's decision to grant or deny a motion to stay proceedings pending arbitration is generally reviewed for an abuse of discretion. *Eric Petroleum I,* citing *Smith v. Javitch Block, L.L.C.*, 2021-Ohio-3344 (8th Dist.); *Ventures, LLC v. Rowe*, 2012-Ohio-

4462, ¶ 18-19 (11th Dist.); *River Oaks Homes, Inc. v. Krann*, 2009-Ohio-5208 (11th Dist.). However, "[a] trial court's grant or denial of a stay based solely upon questions of law, however, is reviewed under a de novo standard." *Id.,* citing *Smith* at ¶ 8; *Buyer v. Long*, 2006-Ohio-472, ¶ 6 (6th Dist.); *Pantages v. Becker*, 2018-Ohio-3170, ¶ 7 (8th Dist.).

**{¶13}** Appellants raise a single assignment of error, however, within their sole assignment they raise five sub-issues for this Court's consideration. We will address these sub-issues in the most logical order to facilitate ease of understanding.

<u>ASSIGNMENT OF ERROR</u>

The trial court erred in staying this matter pending arbitration and compelling arbitration.

**{¶14}** We begin with the gateway issue, the arbitrability of the dispute and whether the matter falls within the purview of the FAA. In so doing, we will address both the effect of the choice of law provision within the ASA and whether R.C. 2711.01(B)(1), the Ohio real estate exception to arbitration, applies, here. We must also address whether the "law of the case doctrine" prevents Appellees from asserting arguments relevant to R.C. 2711.01 due to their failure to appeal this issue in the first appeal. Finally, we address whether either of the Appellees are prevented from participating in this matter.

*Whether the FAA Preempts the OAA, Whether the Choice-of-Law Provision Removes the Matter from the FAA Purview, and Whether R.C. 2711.01(B)(1) Removes the Declaratory Judgment Claim from Arbitration.*

{¶15} Appellants raise several arguments related to arbitrability that are best addressed together. These sub-issues relate to the same basic question: how did the parties intend to resolve their disputes? In order to resolve this question, we must first explain what the parties agreed to within their ASA, and determine whether the real property exception to arbitration, R.C. 2711.01, acts to bar arbitration, here.

{¶16} When addressing the parties' intent, we must review the language of the ASA, particularly the arbitration provision (Section 13), the choice of law provision (Section 14.7), and the assignment clause of Section 14.10, entitled "Assignment."

{¶17} Section 13, the arbitration provision, states: "[u]nless otherwise expressly set forth in this Agreement, the procedures specified in in Section 2.1.8 and this Section 13 will be the sole and exclusive procedures of the resolution of disputes." This language unambiguously provides for Sections 2.1.8 and 13 to govern the arbitration process.

{¶18} Section 13 states that all disputes are to be resolved by means of arbitration unless "expressly set forth in this Agreement." Again, this language is unambiguous. This section shows that the parties contemplated there may be specific issues the parties chose not to arbitrate, but aside from these specific issues, all other disputes were to be resolved through arbitration.

{¶19} Sections 2.1.8 and 13 set out the only specific exceptions to the arbitration process agreed to by the parties: "Title Defects, Excess Net Mineral Acres and Environmental Defects." Again, none of these specifically delineated exceptions to arbitration relates to the assignment clause at the heart of the parties' dispute. The importance of this provision, however, is that it clearly reveals the parties knew they could except some disputes from arbitration, and mutually chose to limit the non-arbitrable

disputes to those specifically listed in this section. The parties' real dispute, here, is limited to whether the parties' procedures regarding the assignment of interests was in violation of the ASA. This dispute clearly does not fall within any of the exceptions contained in the ASA. Hence, these provisions do not serve to remove the dispute over the assignment clause from arbitration. There are no other sections of the ASA which provide for additional specific exceptions from arbitration.

{¶20} Appellants believe that the Ohio real estate exception in R.C. 2711.01(B)(1) acts to remove the issue regarding assignment of rights from arbitration. Appellants contend that, in applying Ohio law, the real property exception to arbitration exempts this controversy, citing *French v. Ascent Resources-Utica, L.L.C.*, 2022-Ohio-869. Appellants urge that *French* stands for the proposition that Ohio law mandatorily applies to disputes surrounding title and possession, thus, those claims may only be determined through the judicial process, not arbitration.

{¶21} We begin with a review of the underlying statute, R.C. 2711.01(B)(1), which acts to remove controversies from arbitration where they involve real property. In relevant part, it provides that:

(B)(1) Sections 2711.01 to 2711.16 of the Revised Code do not apply to controversies involving the title to or the possession of real estate, with the following exceptions:

(a) Controversies involving the amount of increased or decreased valuation of the property at the termination of certain periods, as provided in a lease;

(b) Controversies involving the amount of rentals due under any lease;

(c) Controversies involving the determination of the value of improvements at the termination of any lease;

(d) Controversies involving the appraisal of property values in connection with making or renewing any lease;

(e) Controversies involving the boundaries of real estate.

**{¶22}** *French* is an Ohio Supreme Court case arising out of this District. However, while *French* addresses the real property exception to arbitration, it is not relevant to the issue in this case. *French* was limited to whether an oil and gas lease that expired on its own terms affected title to or possession of real property so as to preclude the matter from arbitration. This is vastly different from the assignment clause at issue, here. *French* does provide the general statutory framework for purposes of an R.C. 2711.01 analysis. R.C. 2711.01(B)(1) sets out two areas requiring judicial determinations, removing a real property issue from arbitration: (1) the question at issue affects possession of real property, and (2) the question at issue affects title.

**{¶23}** As to possession, the *French* Court explained that "an oil and gas lease affects the possession of the land '[b]ecause the lessee also enjoys reasonable use of the surface estate to accomplish the purposes of the lease.' That is, the lessee may exercise dominion over the part of the real estate that is subject to the lease, sometimes to the exclusion of the lessor." *Id.* at ¶ 16. The assignment clause at issue, here, does

not affect possession, as Appellants' right to simultaneously occupy the property alongside Chesapeake or EAP has not been disturbed. The only effect of the assignment provision is with the question of which of the Appellees the Appellants must share their occupancy, EAP or Chesapeake.

{¶24} As to title, Appellants do not own the property. In fact, none of the parties to the instant appeal have title to the property. To the extent the statute impacts title in regard to oil and gas leases, such leases affect title only in that such lease "prevents the landowner from passing 'title free and clear of all liens and encumbrances.' " *Id*. at ¶ 15, citing *Karas v. Brogan*, 55 Ohio St.2d 128, 129 (1978). However, whether EAP or Chesapeake has the simultaneous right to possession, this has no additional effect on the landowner's transferability of property; the property is burdened by the same lease.

{¶25} The trial court and the parties have also cited to *Gustavus, L.L.C. v. Eagle Invests.*, 2012-Ohio-1433 (2d Dist.). The *Gustavus* court applied R.C. 2911.01 in that case because the rescission of an agreement to purchase real property obviously affected one of the two specific statutory exemptions from arbitration. *Id*. at ¶ 16. While the issue in the instant case does involve real property to some extent, it does not involve the sale of, or any kind of agreement to purchase, real property. It simply involves an agreement between two parties who have equal right to possess the property for purposes of drilling for oil and gas. It bears repeating that Appellants do not technically stand to gain any real property right assuming they prevail in this matter. Instead, they gain only the right to dictate which non-property owning party (Chesapeake or EAP) has the right to oil and gas pursuant to the lease. In other words, neither Appellants nor the actual property owners regain any property interests or possession as a result of the litigation. Instead,

Case No. 23 CO 0055

the question Appellants seek to resolve is whether EAP or Chesapeake are subject to the oil and gas lease.  Reversion is not at issue, here.

**{¶26}** As the ASA clearly provides that arbitration governs their dispute pertaining to the assignment clause because it was not specifically enumerated in the ASA provision exempting specific issues from arbitration, nor is it statutorily exempt, Appellants next take aim at the trial court's decision that the FAA governs this arbitration, and asks us to find that the OAA applies, instead.  In support of their argument, Appellants cite to a general choice-of-law provision within the ASA and insist that it supports the conclusion that the parties intended the OAA, not the FAA, to apply.

**{¶27}** The choice-of-law provision within the ASA can only be found within the section titled "Miscellaneous."  This section can best be described as a collection of provisions that appear to be afterthoughts.  It is also immediately evident that these provisions are very vague.  There is no specific delineation as to how any of them are intended to be applied.  These "miscellaneous" provisions appear almost random, and contain no guidance about whether or how they apply to the whole document, or even among the various provisions within the section.  They are, as the title suggests, miscellaneous.

**{¶28}** The choice-of-law in this miscellaneous section clause states in full:  "This Agreement will be interpreted, construed and enforced in accordance with the laws of the State of Ohio." (ASA, p. 31.)  There is no reference of any kind to arbitration within this provision.  Despite this, Appellants seek to have us find that it applies broadly across the entire agreement.

**{¶29}** Both sides cite an abundance of caselaw addressing how a choice-of-law provision has been applied to the issue of whether the FAA or a state arbitration is required. At the outset, we note that most of the caselaw cited by the parties is repetitious and fact specific. Because of this, several cases are not relevant. On review, we can discern that the determining factor regarding the issue of whether the FAA or state arbitration applies depends entirely on what the parties clearly agreed in their governing document. Due to the fact specific nature of these cases, there is no seminal case on this issue.

**{¶30}** In 1989, the U.S. Supreme Court released its Opinion in *Volt Information Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989). The *Volt* Court reviewed whether a choice-of-law provision within an agreement affected whether an arbitration clause would be governed by the FAA or state law. The arbitration clause stated, in part: "an agreement to arbitrate all disputes between the parties "arising out of or relating to this contract or the breach thereof." *Id.* at *470. The choice-of-law provision stated: "[t]he Contract shall be governed by the law of the place where the Project is located." *Id.* The *Volt* Court was tasked with resolving whether the choice-of-law provision was intended by the parties to permit California arbitration to apply in lieu of the FAA.

**{¶31}** In finding that the parties' agreement intended the California Arbitration Association to hear the matter, the *Volt* Court determined "the parties have chosen in their agreement to abide by the state rules of arbitration, application of the FAA to prevent enforcement of those rules would actually be 'inimical to the policies underlying state and federal arbitration law.' " *Id.* at *472. In essence, the Court held the arbitration clause

specifically provided that it applied to the whole contract and the choice-of-law provision specifically stated that the contract, without exception, would be governed by California law.

{¶32} In 1995, six years after *Volt,* the United States Supreme Court released its Opinion in *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995). *Mastrobuono* involves a unique set of facts where the agreement at issue included both an arbitration provision and a choice-of-law provision, however, the actual dispute did not involve a determination of whether the matter was within the purview of the FAA. Rather, the narrow issue in that case was whether the arbitrators' award of punitive damages was permissible where state law required such an award was to be issued only in a judicial forum. *Id.* at *54. The *Mastrobuono* Court held that the agreement and applicable law clearly permitted the arbitrator to award punitive damages. This case provides little guidance on the issue before us.

{¶33} In 2008, the United States Supreme Court released its Opinion in *Preston v. Ferrer*, 552 U.S. 346, 351 (2008). *Preston* presents a complicated factual and procedural history, but it essentially involves an agreement between the parties which included an arbitration clause governed by the American Arbitration Rules. However, one party sought to stay arbitration to allow it to appear before the California Labor Commission, seeking a determination whether the contract as a whole was invalid, before the arbitration process began. Thus, this case turned on issues related to an administrative agency and the interplay with an arbitration provision and is also inapplicable, here.

{¶34} The *Preston* Court did address a choice-of-law provision in the agreement:

"[The] agreement shall be governed by the laws of the state of California." App. 17. A separate saving clause provides: "If there is any conflict between this agreement and any present or future law," the law prevails over the contract "to the extent necessary to bring [the contract] within the requirements of said law.' "

*Id.* at *361.

**{¶35}** The court disposed of the issue by citing to the controlling language within the agreement that " 'any dispute ... relating to ... the breach, validity, or legality' of the contract was to be arbitrated in accordance with the American Arbitration Association (AAA) rules." *Id.* With that in mind, the Court concluded that "the incorporation of the AAA rules, and in particular Rule 7(b), weighs against inferring from the choice-of-law clause an understanding shared by Ferrer and Preston that their disputes would be heard, in the first instance, by the Labor Commissioner." *Id.* at *362-363.

**{¶36}** Later in 2008, we addressed whether the dissolution of a company based in Nevada was properly subject to arbitration. *Durina v. Filtroil*, 2008-Ohio-4803 (7th Dist.). We note that Appellants misinterpret our holding in *Durina*. Appellants believe we decided that Nevada law should govern the arbitration process. Contrary to this assertion, we first upheld the trial court's decision to send the matter to arbitration in accordance with the parties' arbitration clause. Second, we held that the appellee did not waive its right to enforce arbitration. It was in reaching this second part of the holding, which was procedural in nature, we applied Nevada law, consistent with the parties' choice-of-law provision. *Id.* at ¶ 54. However, in deciding the issue of arbitrability, we reached only the threshold issue of whether the matter was appropriate for arbitration.

Case No. 23 CO 0055

We applied procedural law from the state of Nevada to the waiver issue, alone, not to the overall issue of arbitrability.  Thus, *Durina* provides little guidance in the instant matter.

**{¶37}**  Finally, in 2015, the United States Supreme Court released its Opinion in *DIRECTV, Inc. v. Imburgia*, 577 U.S. 47 (2015).  The agreement in *DirectTV* contained a specific arbitration clause, providing:

> any Claim either of us asserts will be resolved only by binding arbitration." App. 128.  It then sets forth a waiver of class arbitration, stating that "[n]either you nor we shall be entitled to join or consolidate claims in arbitration." *Id.*, at 128-129.  It adds that if the "law of your state" makes the waiver of class arbitration unenforceable, then the entire arbitration provision "is unenforceable."

*Id.* at 50.  The court explained that the "law of your state" referred to an invalid California law.

**{¶38}**  Although not cited by the parties, some issues contained in the instant case were addressed in *Gilman v. Walters*, 61 F. Supp. 3d 794, 801 (S.D. Ind. 2014).  While the case is not binding, it provides some guidance in addressing the case before us.  First, the *Gilman* court noted that "[c]lear and robust language may, in and of itself, sufficiently demonstrate the requisite intent to delegate arbitrability questions to an arbitrator."  *Id.* at *801, citing *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010), fn.1, *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995).  The court reiterated the holdings of *Preston* and noted that "reference to or incorporation of the rules and procedures of the American Arbitration Association (the "AAA") and/or JAMS may

constitute clear and unmistakable evidence of a delegation clause." *Id.*, citing *Gilman v. Walters*, 61 F. Supp. 3d 794, 801 (S.D. Ind. 2014).

**{¶39}** Turning to the instant case, the ASA notes that disputes will be resolved by applying "the Commercial Arbitration Rules of the American Arbitration Association" ("AAA"). (ASA, p. 29.) This reference mimics the standard boilerplate arbitration clause provided by the AAA, itself. Again, the parties' arbitration clause (Section 13) provides that:

> Any dispute under this Agreement (other than disputes regarding Title Defects, Excess Net Mineral Acres and Environmental Defects which will be handled in accordance with Section 2.1.8, and timely payment of the Purchase Price in accordance with Section 2) will be submitted to binding arbitration in Cleveland, Ohio in accordance with the Commercial Arbitration Rules of the American Arbitration Association.

(ASA, Section 13.)

**{¶40}** The AAA allows:

> The parties can provide for arbitration of future disputes by inserting the following clause into their contracts:

> Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules,

and judgment on the award rendered by the arbitrator(s) may be entered in

any court having jurisdiction thereof.

Commercial Arbitration Rules and Mediation Procedures (Including Procedures for Large, Complex Commercial Disputes), at http://www.adr. org/aaa/faces/rules.

**{¶41}** AAA is a national, not state, association. The language of Section 13 requires the parties simply to follow AAA rules with some modification. Due to the vague, general, boilerplate language used by the parties, we cannot find that any specific intention is expressed in their ASA to enter into a specific agreement removing arbitration from the purview of the FAA and mandating a state arbitration. Unlike *Volt,* the parties did not make any effort to incorporate Ohio law into their arbitration clause, and instead specifically omitted arbitration from a list of possible disputes that were incorporated by the parties into the choice-of-law provision.

**{¶42}** There is nothing in the cases cited by the parties that suggests a choice-of-law provision, absent the inclusion of specific language that the choice of law section specifically applies to arbitration, takes the matter out of the purview of the FAA. Instead, each of the cases cited by both parties reflect that the determination of whether the FAA or state law governs a dispute is made solely by examining the language within the agreement and all of its provisions. The ASA in this case is devoid of any evidence that the parties intended the choice-of-law provision to specifically apply to the arbitration clause, and the arbitration clause, itself, leads to the opposite conclusion.

**{¶43}** Accordingly, there is no merit to Appellants' argument that the matter is exempt from arbitration under the plain terms of the contract or Ohio's real estate

Case No. 23 CO 0055

exemption. Further, the plain language of the agreement does not support a finding that the parties intended for arbitration to be governed by the OAA.

*Law of the Case Doctrine*

**{¶44}** Appellants next contend that Appellees should not be able to attack the court's decision that the quiet title action falls within Ohio's real property exception from arbitration because they did not file a cross appeal on that issue in the prior appeal. Thus, they believe Appellees have waived the issue.

**{¶45}** Again, this matter has had a somewhat long history. The trial court entered a decision encompassing several issues. Somewhat confusingly, the court had denied a preliminary junction and then ruled on the merits of a permanent injunction. Both were the subject of the first appeal. In that appeal, finding a procedural error had occurred, we remanded the matter only as to the issues involved in the permanent injunction, finding that denial of the preliminary injunction did not result in a final appealable order. It is important to recognize that the trial court's first entry determined that only the declaratory judgment claim fell within the real estate exception to arbitration pursuant to R.C. 2711.01(B)(1). Based on its belief that the declaratory judgment claim fell within this exception, the court stayed that claim, but ordered that all other remaining claims were to proceed through federal arbitration. After the matter was remanded following our decision in the first appeal, the court reversed its decision as to the quiet title action, and instead determined the entire matter was appropriate for arbitration.

**{¶46}** Importantly, the first appeal centered on the trial court's failure to hold a hearing as requested by Appellants. The court originally scheduled a hearing, but later cancelled hearing on the matter and chose to rule based on the parties' briefing. On

appeal, we held that Ohio law requires the trial court to hold a hearing once it is requested, and that the trial court erred in rendering a decision without first holding a hearing. Crucially, at the time Appellants sought a hearing on the arbitration issues, it was sought on all claims filed in the trial court, not just the claims that the trial court later deemed subject to the arbitration. At the time Appellants requested their hearing, on which they successfully appealed and were granted relief, the court had not entered any judgment, even on the allegations as to the real property exception. We remanded for hearing on all issues pending before the trial court at the time hearing was requested by Appellants.

{¶47} While Appellants urge that Appellees' arguments involving R.C. 2711.01(B) violate the law of the case doctrine, that doctrine is completely inapplicable under these facts. Appellants were successful in their first appeal seeking a remand, where we ordered the trial court to hold a hearing and reconsider all issues related to arbitration. We ordered a full hearing on all arbitration issues, and essentially vacated the trial court's prior order due to the procedural defect resulting from the court's failure to hold a hearing when it was requested. Once the matter was remanded following Appellants' appeal, the issues surrounding jurisdiction of the FAA and OAA became the center of the litigation, allowing all parties to fully litigate those issues. Appellants now seek to retain certain aspects of the first order that they would like to keep intact, despite asking for and being granted a full hearing on all of the arbitration issues.

{¶48} We must again note that we did not decide any substantive issues in our first opinion in this matter, which resulted in remand to the trial court. Because this Court did not enter any substantive findings, instead remanding the entire matter to the trial

court for a full hearing, there was no law of the case to apply except as regards the procedural issue to set the matter for a hearing, with which the trial court complied.

**{¶49}** As such, the trial court is not in violation of the rule of the case doctrine, or any other law, when it reconsidered issues relating to the alleged real estate exception. The trial court acted well within its role when it properly considered the issue of whether the real estate exception in the parties' ASA applied to the declaratory judgment claim. The trial court, after hearing, ruled against Appellants. In relying on this decision, Appellees are likewise not barred by any rule of the case doctrine.

*Whether the Trial Court Erroneously Enforced the ASA Arbitration Provision*

**{¶50}** Appellants contend that Chesapeake and EAP have made inconsistent statements during these proceedings as to which one of them is actually bound by the ASA. Regarding Appellee Chesapeake, Chesapeake contends that it assigned its rights under the ASA to Appellee EAP. Hence, Appellants urge that Chesapeake has no standing allowing it to enforce any provision of the ASA, and certainly not the arbitration provision. As to Appellee EAP, EAP's position is that it was never assigned the full rights under the ASA, instead, it was solely assigned the mineral interests. Appellants argue this position strips EAP's enforceability options, because they, themselves, do not believe they are a party to the agreement.

**{¶51}** In response, Appellee Chesapeake explains that Appellants cannot simultaneously argue that neither Chesapeake nor EAP can rely on the ASA to compel arbitration, while contending that Chesapeake is in breach of the ASA and EAP's alleged mineral rights were never appropriately granted by Chesapeake. EAP argues that it is entitled to compel arbitration under the theory of equitable estoppel, as the claims at issue

Case No. 23 CO 0055

turn entirely on the ASA and Appellants' allegations of breach on the part of both EAP and Chesapeake.

**{¶52}** The narrow issue is which of the Defendant/Appellees are able to enforce the arbitration clause of the ASA.

*Chesapeake*

**{¶53}** Problematically, the trial court first determined that Chesapeake is entitled to compel arbitration based on the OAA, however, following hearing on remand, the court found that the FAA preempts the OAA. While the parties argue at length on this subject, resolution of this issue is much more straightforward than the arguments provided by the parties would lead us to believe.

**{¶54}** In relevant part, 9 U.S.C. 4 provides that:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

**{¶55}** Appellants' entire argument on this issue is circular. They agree that the ASA is a valid existing agreement that binds the parties to its terms. In essence, they seek to bind Chesapeake to the assignment provision. They contend that, pursuant to the ASA, prior to making any assignment of rights, Chesapeake was first required to obtain Appellants' consent. Because Chesapeake failed in this regard, any such

purported assignment to EAP is invalid. However, Appellants next also argue that Chesapeake is not entitled to enforce the arbitration clause of the ASA because it assigned its interests to EAP, and so Chesapeake is no longer a party to the agreement. In other words, Appellants contend simultaneously that Appellees both have rights under the ASA, and that neither have rights.

{¶56} The matter is not nearly as convoluted as Appellants present. Appellants are not attempting in this matter to terminate the entire ASA or Chesapeake's interests. Instead, they seek to rescind the assignment from Chesapeake to EAP based on the language of the ASA and to declare that Chesapeake remains bound by the terms of the ASA. There is no evidence in this case, nor is there any argument, that the ASA is no longer valid or applicable. There is also no contention that the ASA's components are severable.

{¶57} According to Appellants' complaint, their view is that the assignment to EAP is void because Chesapeake was not permitted to assign the lease without their permission. As a remedy, Appellants seek to reinstate Chesapeake as an interest holder and terminate any interest of EAP. They also contend that, due to the allegedly void assignment, neither Chesapeake nor EAP can enforce the ASA and compel arbitration under its terms. It is readily apparent that Appellants cannot succeed on their complaint if Chesapeake is no longer bound by the terms of the ASA. Contrary to Appellants' arguments, there is nothing within the ASA or contained in law that would allow Appellants or any court to invalidate the arbitration clause but maintain the assignment clause; the provisions of the ASA are not severable. The entire agreement either validly exists and all of its provisions have effect, or it does not exist.

Case No. 23 CO 0055

**{¶58}** Appellants cite to recent Ohio caselaw holding that an assignor lacked standing to enforce an agreement's arbitration provision. *Choice Hotels Internatl., Inc. v. C & O Developers, L.L.C.*, 2022-Ohio-3234, ¶ 6 (8th Dist.). Two of the parties on appeal in that case had entered into an agreement which contained an arbitration provision. One of those parties later assigned their rights, and the assignee entered into separate, side agreements with Choice Hotels. That assignor later attempted to enforce the arbitration agreement in the original document. The *Choice Hotels* court determined "an assignor who has transferred his or her contract rights is no longer a party to the contract and cannot enforce it." *Id.* at ¶ 23, citing *Cameron v. Hess Corp.*, 974 F.Supp.2d 1042, 1055 (S.D. Ohio 2013), citing 6 Am. Jur.2d, Assignments, Section 1 (2012).

**{¶59}** *Choice Hotels* is readily distinguishable from the instant matter. First, there was no question the party who attempted to enforce the arbitration agreement had *validly* assigned their rights. The assignment was uncontested and was not an issue in the case. Here, Appellants contend that Chesapeake's rights were not validly assigned as per the ASA. Second, the litigation in *Choice Hotels* did not involve the original agreement containing the arbitration clause at all. In other words, the agreement containing the arbitration clause was not at issue in the legal proceedings requested for failure to compel the terms of the side agreement. Here, the crux of the instant legal proceedings is whether Chesapeake violated the ASA's assignment clause, thus placing the ASA and its provisions directly at the center of the dispute.

**{¶60}** For the same reasons, another case cited by Appellants does not apply in the manner they propose. *HT of Highlands Ranch, Inc. v. Hollywood Tanning Systems, Inc.,* 590 F.Supp.2d 677 (D.New Jersey 2008). While an issue arose in that case as to

whether the party attempting to enforce arbitration had assigned all, or only part, of their interests, the court determined that arbitration was unwarranted "[i]n light of Plaintiffs' allegations that HTS assigned all such rights to HT Franchising, which the Court must credit at this stage of the litigation." *Id.* at *685. Thus, despite the fact that defendant's position was that complete assignment did not occur, and only full assignment would allow plaintiffs to enforce the arbitration clause, the court found that it must view the issue in a light most favorable to the plaintiffs who declared that a full assignment had been completed.

**{¶61}** In the matter before us, Appellants themselves, contend that a valid assignment has not occurred. Hence, it appears that an application of the rule announced in *HT of Highlands* should result in allowing Appellee Chesapeake to invoke the arbitration clause. The *HT of Highlands* court viewed the facts in the complaint must be taken as true when determining whether arbitration is appropriate. Because Appellants' complaint alleged the assignment was improper and all rights under the ASA belong to Chesapeake, Chesapeake would still be bound by and able to enforce all terms of the ASA, including the arbitration clause.

*EAP*

**{¶62}** As EAP was the assignee of Chesapeake in this matter where the question is whether the assignment is valid, EAP is clearly a necessary party to the litigation. As Chesapeake is permitted to enforce the arbitration clause, EAP may also participate in the arbitration as a necessary party. Clearly, either Chesapeake or EAP is entitled to enforce the provisions of the ASA, including the arbitration clause, depending on whether Chesapeake validly assigned its rights under the ASA to EAP. Which entity is entitled to

Case No. 23 CO 0055

enforce depends on the ultimate resolution of the case, and this is appropriate for arbitration under the terms of the ASA.

**{¶63}** Regardless, as the trial court determined, EAP would also be able to participate under the theory of equitable estoppel. Equitable estoppel is available in arbitration matters under both federal and Ohio law.

It is established law in the Sixth Circuit that "nonsignatories may be bound to arbitration agreements under ordinary contract and agency principles." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 629 (6th Cir. 2003) (citing *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281 (6th Cir. 1990)). Non-signatories may be subject to an arbitration agreement between two contracting parties through one of the following five theories: (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, and (5) estoppel. *Javitch*, 315 F.3d at 629 (citing *Thomson-CSF v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)).

*Belmont Med. Care, LLC v. Community Ins. Co.*, 2019 WL 1676003, *4 (S.D.Ohio April 17, 2019).

**{¶64}** In *Belmont Med. Care,* the court acknowledged that these theories would equally apply to non-signatories attempting to enforce an arbitration clause, and to parties attempting to enforce an arbitration clause against a non-signatory. *Id.* at *4. In the former scenario:

The Eighth Circuit summarized that "[a] willing nonsignatory seeking to arbitrate with a signatory that is unwilling may do so under what has been

called an alternative estoppel theory which takes into consideration the relationships of persons, wrongs, and issues, [b]ut a willing signatory seeking to arbitrate with a non-signatory that is unwilling must establish at least one of the five theories described in [*Thomson-CSF*]. *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 799 (8th Cir. 2005) (citing *Merrill Lynch*, 337 F.3d at 131).

*Id.* at \*4.

{¶65} Because EAP could be considered a non-signatory willing to participate in arbitration, the theory of estoppel allows EAP to participate.

{¶66} "In Ohio, as in most jurisdictions, 'equitable estoppel' generally seeks to prevent a party from fraudulently 'having it both ways.' " *AtriCure, Inc. v. Meng*, 12 F.4th 516, 526 (6th Cir. 2021), citing *Doe v. Archdiocese of Cincinnati*, 2008-Ohio-67; *Hortman v. City of Miamisburg*, 2006-Ohio-4251; *see generally* 4 Williston on Contracts § 8:3 (4th ed.), Westlaw (database updated May 2021); Richard Frankel, The Arbitration Clause as Super Contract, 91 Wash. U. L. Rev. 531, 580-81 (2014). Hence:

First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause "must rely on the terms of the written agreement in asserting [its] claims" against the nonsignatory. When each of a signatory's claims against a nonsignatory "makes reference to" or "presumes the existence of" the written agreement, the signatory's claims "arise[ ] out of and relate [ ] directly to the [written] agreement," and arbitration is appropriate. Second, "application of equitable estoppel is

warranted . . . when the signatory [to the contract containing the arbitration clause] raises allegations of . . . substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." Otherwise, "the arbitration proceedings [between the two signatories] would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted."

*Belmont Med. Care* at *4, citing *Orcutt v. Kettering Radiologists, Inc.*, 199 F.Supp.2d 746, 752 (S.D. Ohio 2002).

**{¶67}** "To trigger the doctrine, a plaintiff's claims must seek to enforce duties that 'arise from the contract containing the arbitration clause,' not from other legal sources (such as a statute or tort law)." *AtriCure* at *527, citing *Taylor v. Ernst & Young, L.L.P.*, 2011-Ohio-5262; *Henderson v. Laws. Title Ins. Corp.*, 2006-Ohio-906.

**{¶68}** Only one of the two prongs within the test must be met. Both, however, appear to have been met, here. As to the first, the claims raised within Appellants' complaint are completely entangled with the ASA. The root of the complaint is whether Chesapeake violated the terms of the agreement by assigning its interests to EAP without first obtaining Appellants' written consent. Because the interpretation of provisions in the ASA is outcome determinative to this issue and the ASA contains an arbitration clause, the first prong of the test is met. Again, although both prongs need not be satisfied, the second is also met, here, as the complaint insinuates misconduct on the part of Chesapeake and EAP. According to the complaint, Chesapeake attempted to obtain Appellants' consent to the assignment, but the request was denied. Despite this, Chesapeake assigned its interests to EAP knowing that such action was in violation of

the ASA. Appellants contacted both Chesapeake and EAP to contest the language of assignment based on the assignment clause in the ASA. While the complaint did not specifically state its claims were based on misconduct, it could be construed that the complaint alleges they attempted to jointly violate the clause despite being placed on notice of Appellants' objection, raising allegations of misconduct.

{¶69} For all of the foregoing reasons, Appellants' arguments intending to exempt this matter from arbitration, and if that fails, to remove the matter from the purview of the FAA and into the OAA, are unsupported. Likewise, their arguments that neither Appellee may invoke the arbitration clause also fails. Appellants' sole assignment of error is without merit and is overruled.

Conclusion

{¶70} Appellants contend that, according to state law, claims that involve the determination of real property rights are reserved for a judicial forum, not arbitration. Appellants also argue that a choice-of-law provision within the parties' agreement dictates that disputes will be governed according to state law, thus the trial court's decision to send the claims to arbitration in accordance with the FAA was in error. Appellants also urge that neither Appellee may invoke the arbitration clause in the ASA. For the reasons provided, Appellants' arguments are without merit and the judgment of the trial court is affirmed.

Robb, P.J. concurs.

Dickey, J. concurs.

Case No. 23 CO 0055

---

For the reasons stated in the Opinion rendered herein, Appellants' assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Columbiana County, Ohio, is affirmed.  Costs to be taxed against the Appellants.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**