[Cite as *Eric Petroleum Corp. v. Vendel*, 2025-Ohio-1238.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Eric Petroleum Corp. et al.,  :

      Appellees/  :
      Cross-Appellants,  :      Nos. 24AP-272

v.  :      and
      24AP-275

Eric Vendel, Chief, Division of Oil and  :      (C.P.C. No. 23CV-1832)
Gas Resources Management et al.,

      :      (REGULAR CALENDAR)

      Appellants/
      Cross-Appellees.  :

---

D E C I S I O N

Rendered on April 8, 2025

---

**On brief:** *Dave* Yost, Attorney General, *Joseph Wambaugh*, and *Elizabeth M. VanNess*, for appellant/cross-appellee Eric Vendel, Chief, Division of Oil and Gas Resources Mangement. **Argued:** *Joseph Wambaugh*.

**On brief:** *Vorys, Sater, Seymour and Pease LLP, Timothy B. McGranor*, *Gregory D. Russell*, *Ilya Batikov*, and *Matthew D. Fazekas*, for appellant/cross-appellee EAP Ohio, LLC. **Argued:** *Timothy B. McGranor*.

**On brief:** *Black, McCuskey, Souers & Arbaugh, James M. Wherley, Jr.* and *Thomas A. Hill*, for appellees/cross-appellants Eric Petroleum Corporation and Eric Petroleum Utica, LLC. **Argued:** *James M. Wherley, Jr.*

---

APPEALS from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Appellants/cross-appellees, Eric Vendel, Chief of the Division of Oil and Gas Resources Management of the Ohio Department of Natural Resources ("Division") and EAP Ohio, LLC ("EAP"), appeal the March 21, 2024 judgments of the Franklin County

Court of Common Pleas, which affirmed in part and reversed in part a February 16, 2023 order of the Ohio Oil and Gas Commission ("Commission"). This court consolidated the cases for purposes of appeal. Eric Petroleum Corp. and Eric Petroleum Utica, LLC (collectively "Eric Petroleum") cross-appeal the March 21, 2024 judgments. For the following reasons, we affirm in part and reverse in part the judgments of the trial court.

## I. Facts and Procedural Background

{¶ 2}   This appeal concerns the threshold showing a business entity must make to have standing to administratively appeal a Chief Order's approving an application for "statutory unitization," which the Supreme Court of Ohio in *State ex rel. Kerns v. Simmers*, 2018-Ohio-256, ¶ 2 recently explained "consolidates the mineral or leasehold interests in oil and gas underlying multiple tracts of land above a common reservoir" with the goal of "protecting property rights and preventing waste[.]"

{¶ 3}   The instant litigation arose with EAP's application for a statutory unitization order under R.C. 1509.28 to combine multiple leased and unleased properties into a production unit, known as the Dawson South Unit, for purposes of mineral extraction. Following a hearing, the Division approved EAP's application in Chief's Order 2021-173, dated October 26, 2021. In doing so, the Chief found that EAP is the "owner," as defined by the statutory unitization statutes, of greater than 65 percent of the land area overlying the pool as required by R.C. 1509.28(A). (Oct. 26, 2021 Order, Findings at ¶ 1.) The order then listed the "working interest[s]," defined as "an interest in oil and/or gas in the unit area by virtue of a lease, operating agreement, fee title, or otherwise, including a carried interest, the owner of which is obligated to pay, either in cash or out of production or otherwise a portion of the unit expense." (Oct. 26, 2021 Order, Definitions at ¶ 4.) A "[w]orking interest owner" is further defined as "a person or the estate of a person who owns an interest in oil and/or gas in the unit area by virtue of a lease, operating agreement, fee title, or otherwise, including a carried interest, the owner of which is obligated to pay, either in cash or out of production or otherwise a portion of the unit expense" but "does not include an unleased mineral owner." (Oct. 26, 2021 Order, Definitions at ¶ 5.) Relevant to this appeal, the Chief's Order attributed the entire working interest in Track 12, covered by the "Dawson" lease, to EAP and its partner; the Order does not list Eric Petroleum in the schedule of current mineral owners, unleased mineral interest owners, nonconsenting

working interest owners, or working interest owners. (Oct. 26, 2021 Order at Exs. A through D.)

{¶ 4} The Chief's Order required EAP to record a copy of the Order. (Oct. 26, 2021 Order at ¶ 12.) It also provided a procedure for EAP to follow should interests in the affected drilling unit change, and specified, "[e]xcept as specifically set forth in [the Order] terms, nothing herein shall be construed as a release or waiver of any private right, obligation, duty, claim, or cause of action." (Oct. 26, 2021 Order at ¶ 9 (e), (h) through (l), ¶ 14.) The Chief retained "continuing jurisdiction" and "reserve[d] the right to amend or terminate" the Order after the commencement of unit operations within the unit area. (Oct. 26, 2021 Order at ¶ 13.)

{¶ 5} On November 26, 2021, Eric Petroleum filed a notice of appeal of the Chief's Order with the Commission pursuant to R.C. 1509.36 and Adm.Code 1509:1-11 with a supporting affidavit of Eric Petroleum President, Bruce Brocker. In the notice of appeal, Eric Petroleum stated that in 2008 it entered into an oil and gas lease with Myron and Lillian Dawson, who are listed as the mineral interest owners of Track 12 in the Chief's Order. (Nov. 26, 2021 Notice of Appeal at 3; Oct. 26, 2021 Order, Ex. C at 1.) The Dawson lease was then included in an Assignment Bill of Sale and Conveyance between Eric Petroleum and Ohio Buckeye Energy, LLC ("Buckeye"), an entity that merged out of existence into Chesapeake Explorations, LLC ("Chesapeake"). According to Eric Petroleum, it assigned to Buckeye/Chesapeake the "[d]eep [r]ights" but "retained the shallow rights, certain participation rights, and a reversionary interest in the assigned acreage upon breach of the drilling commitment by Chesapeake." (Nov. 26, 2021 Notice of Appeal at 3.) The conveyance was subject to an unrecorded Asset Sales Agreement ("ASA") dated July 27, 2010.

{¶ 6} As its sole ground to appeal the Chief's Order to the Commission, Eric Petroleum cited to Section 5.7 of the ASA, "Option to Participate," which states:

> 5.7 Option to Participate. Seller shall have the right and option, on a well by well basis, to participate for a ten percent (10%) working interest in any wells drilled on, or within a unit including the Properties (or any renewal, extension, or new lease of the same lands which is executed within one year of the initial expiration or termination of any of the Real Property Interests), proportionately reduced to the percentage the

> Properties acquired by Buyer hereunder, or pursuant to the terms herein, contribute to a unit, at actual cost, exclusive of any acreage costs attributable to the Properties; provided however, that Seller would forfeit future participation rights within a unit or contract area if Seller fails to participate in the initial well drilled upon such unit or contract area. Notwithstanding anything contained herein to the contrary, in the event that the aforementioned calculation results in Seller's working interest in any well (assuming Seller elected to participate in the initial well in the unit thereof), being less than an undivided five percent (5%) of 8/8ths working interest, then Seller's working interest in such well shall be the lesser of (i) an undivided five percent (5%) of 8/8ths working interest; or (ii) a twenty percent (20%) share of Buyer's working interest in such well, as derived from the Properties, proportionately reduced by such Properties' contribution to the drilling unit upon which such well is drilled.  No assignment by Buyer of a portion of its interest in any such well or unit would cause the above described Seller participation percentage(s) to be further reduced. To the extent Seller elects to participate in the initial well, the rights and interest of the parties would be subject to a mutually. agreeable AAPL Form 610-1989 Model Form Operating Agreement (attached hereto as Exhibit "E") designating Buyer or its designated affiliate, as the operator under such Operating Agreement. Such right of participation would be proportionately reduced based on the percentage contribution of the Properties included in the unit or contract area for a well except as provided above.

(Nov. 26, 2021 Notice of Appeal at 4.) Eric Petroleum asserted that it is "entitled to participate as a [non-consenting] working interest owner in wells drilled that utilize acreage from the Dawson lease" under this section.  (Nov. 26, 2021 Notice of Appeal at 4.)

{¶ 7}    With its appeal to the Commission, Eric Petroleum sought review of whether the Chief's Order is unlawful and unreasonable by: failing to recognize Eric Petroleum's alleged working interest ownership rights in Track 12 of the Dawson lease; attributing ownership of the majority portion of the working interest in the Dawson lease to EAP; ordering EAP to record the Chief's Order; impairing Eric Petroleum's contract rights in violation of Article II, Section 28 of the Ohio Constitution; and generally failing to protect Eric Petroleum's correlative rights.  In support of these claims, Eric Petroleum argued that Chesapeake breached its drilling commitment contained in Section 5.9 of the ASA, which resulted in undeveloped portions of the Dawson leasehold acreage reverting to Eric

Petroleum, and additionally breached Section 14.10 of the ASA by assigning the Dawson lease to EAP without Eric Petroleum's consent, invalidating that assignment. Due to Chesapeake's breaches of the ASA, Eric Petroleum contended it either "owns the Dawson acreage outright," or, at minimum, the assignment from Chesapeake to EAP must be rescinded. (Nov. 26, 2021 Notice of Appeal at 7.)

{¶ 8} Notably, Eric Petroleum argued throughout its notice of appeal to the Commission that the property interests implicated in Sections 5.9 and 14.10 of the ASA were at issue in pending litigation. *See* Nov. 26, 2021 Notice of Appeal at 5 (stating the Chief's Order "inappropriately purports to resolve currently litigated property issues"); at 6 ("The current ownership of undeveloped portions of the Dawson lease is . . . a matter that is currently being litigated."); at 7 ("By attributing ownership of the working interest in the Dawson lease to EAP . . ., Chief's Order 2021-173 purports to adjudicate the very property issues that are involved in a pending civil action."); Brocker Aff. at ¶ 15-16 (averring the Dawson lease, including the issue of reversion under Section 5.9 of the ASA, is the subject of ongoing litigation in Columbiana County). However, Eric Petroleum also maintained the Columbiana County litigation did not affect its appeal of the Chief's Order to the Commission.

{¶ 9} EAP filed a motion to intervene as an "interested person" pursuant to R.C. 1509.36 and Adm.Code 1509-1-13(C), which the Commission granted. The Division and EAP, citing the pending Columbiana County litigation, filed motions to dismiss Eric Petroleum's notice of appeal. Eric Petroleum filed responses in opposition to the motions to dismiss. Concerning the Columbiana County litigation, Eric Petroleum stated,

> [it] freely admits that the Commission has no authority to decide the 'consent to assignment' issue under Section 14.10 of the ASA, or the breach of the drilling commitment issue under Section 5.9 of the ASA, issues that are presently being litigated, and properly belong in, Columbiana County Common Pleas and/or the Seventh District Court of Appeals.

(Mar. 15, 2022 Response in Opp. at 7-8.) Eric Petroleum also conceded the Commission could not determine property interests or constitutional claims, but asserted it was preserving those issues for the trial court to address on appeal: "In short, any truly disputed title issues raised in Eric [Petroleum]'s notices of appeal have been raised for purposes of

context and/or preservation." (Mar. 15, 2022 Response in Opp. at 7, 9-10.) However, Eric Petroleum argued the Commission nevertheless had jurisdiction to determine whether the Chief's Order is unlawful and unreasonable as to whether EAP used the correct statutory procedures, whether the Chief protected Eric Petroleum's correlative rights including consideration of a 500 percent nonconsent penalty, whether the Chief issued the Order based on a flawed title search, and whether the Chief exceeded his authority by ordering documents to be recorded that, in Eric Petroleum's view, ignored evidence of title.

{¶ 10} The Commission held an oral argument on the motions to dismiss in December 2022. During the hearing, the parties discussed the litigation in Columbiana County, which they acknowledged was initiated by Eric Petroleum to, in part, resolve their claims concerning the assignment from Chesapeake to EAP and the reversion under the drilling commitment provision. Eric Petroleum explained to the commissioners that, regardless of the Columbiana County litigation, the Chief's Order adversely affects them by: infringing upon its option to participate, which it asserted "is in and of itself is an interest in real property"; ignoring its "rights under the chain of title of public record"; imposing nonconsent penalties that may lead Eric Petroleum to never be paid; failing to protect their correlative rights; and raising "questions about proper landowner approval" and "statutory compliance." (Dec. 6, 2022 Tr. at 32-33, 35-36, 48.) Eric Petroleum disagreed that, to secure an appeal before the Commission, it needed to state in its notice of appeal what specific correlative rights the Chief's Order failed to adequately protect and instead took the position that this case warranted discovery and an evidentiary hearing.

{¶ 11} On February 16, 2023, the Commission determined Eric Petroleum lacked standing to pursue an appeal of the Chief's Order pursuant to R.C. 1509.36. The Commission first noted it lacked jurisdiction to resolve questions concerning the validity of property rights. The Commission further reasoned that the "option to acquire a working interest" held by Eric Petroleum was not a direct interest in the subject lease when the Order was issued to meet the definition of an "interested party" under Adm.Code 1509-1-02(I) and that, even viewing the evidence in a light most favorable to Eric Petroleum, it had not otherwise shown any real and current injury, or threat thereof, actually exists which is fairly traceable to the Chief's Order. (Feb. 16, 2023 Comm. Order at 3-4.) The Commission

further decided it did not have authority to determine constitutional questions. As a result, the Commission dismissed Eric Petroleum's administrative appeal of the Chief's Order.

{¶ 12} On March 17, 2023, Eric Petroleum appealed the Commission's order of dismissal to the trial court pursuant to R.C. 1509.37. EAP and the Division again filed motions to dismiss the appeal on the basis that Eric Petroleum lacked standing and additionally argued that Eric Petroleum's appeal rested on issues the Division and the Commission have no regulatory authority to decide. Following briefing and a hearing, the trial court issued a decision and judgment entry on March 21, 2024 reversing in part and affirming in part the Commission's order.

{¶ 13} First, the trial court determined that the Commission's decision to dismiss the appeal based on lack of standing was "not lawful or reasonable"—the legal standard set forth in R.C. 1509.37. (Mar. 21, 2024 Decision at 5, 7.) The trial court reasoned that the Commission incorrectly relied upon the definition of an "interested person" in Adm.Code 1509-1-02(I) and therefore improperly focused on whether Eric Petroleum had a "direct interest" in the unit. (Mar. 21, 2024 Decision at 10-11.) Citing *Wehr v. Div. of Oil & Gas Resources Mgmt.*, 2018-Ohio-5247 (10th Dist.) the trial court determined that the Commission should not have considered traditional standing principles—whether Eric Petroleum had succeeded in demonstrating any real and current injury, or threat thereof, exist. Instead, in the trial court's view, the Commission should have assessed whether Eric Petroleum was "any person adversely affected" by a commission order under the plain language of R.C. 1509.36 with consideration of whether Eric Petroleum was "a person claiming to be adversely affected" under the administrative definition of "appellant." (Mar. 21, 2024 Decision at 11, 14, 19, citing Adm.Code 1509-1-02(B).) The trial court further determined that, pursuant to *Wehr*, the Commission should have given some weight to Eric Petroleum's evaluation of their own property interests in deciding whether Eric Petroleum was adversely affected by the Order.

{¶ 14} Applying this analysis to the interests raised by Eric Petroleum and viewing those interests in a light most favorable to Eric Petroleum, the trial court concluded that the Commission should have found Eric Petroleum brought viable claims that it was "adversely affected" by the Chief's Order to support standing to administratively appeal the Chief's Order. As grounds to support Eric Petroleum's standing to appeal, the trial court

cited: (1) the Chief's Order required EAP to record the Order, including the working interests listed therein; (2) Eric Petroleum's retention of "shallow rights" akin to a contiguous property owner; (3) the penalty charged to uncommitted working interest owners Chief's Order; (4) Eric Petroleum's assertion in a reply brief that EAP acknowledged Eric Petroleum held an approximate 3 percent working interest in a proposed well; and (5) Eric Petroleum's assessment of the impact of the Chief's Order on their interests. (Mar. 21, 2024 Decision at 13-14; 18-19.)

{¶ 15} Second, the trial court determined the Commission's order was not lawful or reasonable to the extent it granted the motions to dismiss based on its lack of authority to determine contractual disputes and determine property rights between the parties. Specifically, while the Court agreed the Commission does not adjudicate the parties' legal rights and decide title issues—those are issues left to the courts—it explained that the Commission is authorized to review and determine property rights in a lease or contract within the confines of determining if the Chief's Order is reasonable and lawful. In the trial court's view, the Commission could exercise this power in a manner that accommodates subsequent court decisions resolving title. The trial court further found the *Bruce Dolittle v. Transcontinental Oil & Gas, Inc.*, Franklin C.P. No. 94CVF02-839 (Dec. 1, 1994) decision to be neither binding and nor persuasive, and that *Dolittle* must be read in conjunction with *Houser v. Columbia Gas Transmission Corp.*, 54 Ohio App.3d 145 (10th Dist. 1988), which held the Commission was obligated to review disputed lease provisions. Finally, the trial court noted that, in this case, the Commission did make legal determinations based on interpreting the lease and sales provisions to determine standing.

{¶ 16} Lastly, the trial court agreed with the Commission's determination to dismiss Eric Petroleum's constitutional claims, which essentially alleged the Chief's Order retroactively eliminated its property interest in violation of Article II, Section 28 of the Ohio Constitution. According to the trial court, Eric Petroleum admitted that the Chief and the Commission do not have authority to decide constitutional questions and, therefore, the trial court likewise did not have authority to decide these questions on appeal. Nevertheless, the court recognized that "it may have some authority" to consider Eric Petroleum's constitutional claims based on *Kerns*. (Mar. 21, 2024 Decision at 37.) On that authority, the trial court determined the Chief's Order and the statute by which it was

issued, R.C. 1509.28(D) through(G), were not applied to a preexisting lease or sales agreement in violation of the retroactive clause.

{¶ 17} As the case stands following the trial courts judgments, Eric Petroleum may proceed with an administrative appeal of the Chief's Order concerning its alleged property interest in the drilling unit but cannot pursue the associated constitutional claims. The Division and EAP filed notices of appeal, those appeals were consolidated, and Eric Petroleum filed a cross-appeal.

## II.  Assignments of Error

{¶ 18} The Division asserts two assignments of error:

> First Assignment of Error: The trial court erred in determining that Eric Petroleum has standing to appeal the Chief's Order.

> Second Assignment of Error: The trial court erred in holding that the Commission has the authority to determine private property rights when deciding whether a chief's order is lawful and reasonable.

> EAP asserts two assignments of error:

> 1. The trial court erred in its March 21, 2024, Judgment when it reversed the Oil and Gas Commission's February 16, 2023, Order dismissing Eric Petroleum's appeal for lack of standing, based on its incorrect determination that the Commission's order was unreasonable and unlawful.

> 2. The trial court erred in its March 21, 2024, Judgment when it ordered EAP Ohio, LLC's motion to dismiss filed with the Commission be denied.

> Eric Petroleum, in its cross-appeal, asserts one assignment of error:

> FIRST CROSS-ASSIGNMENT OF ERROR: The trial court erred when it held that the Chiefs Order did not unconstitutionally impair Eric Petroleum's rights.

## III.  Standard of Review

{¶ 19} Appeals to the Franklin County Court of Common Pleas from the Oil and Gas Commission are generally governed by R.C. 1509.37, which provides in part:

> In the hearing of the appeal the court is confined to the record as certified to it by the commission.
>
> . . .
>
> If the court finds that the order of the commission appealed from was lawful and reasonable, it shall affirm the order. If the court finds that the order was unreasonable or unlawful, it shall vacate the order and make the order that it finds the commission should have made. The judgment of the court is final unless reversed, vacated, or modified on appeal.

*See Johnson v. Kell*, 89 Ohio App.3d 623 (10th Dist. 1993) (explaining that, in reviewing an appeal of an order of the Oil and Gas Commission, the Court of Common Pleas must focus on whether the Commission's order is reasonable and lawful.). "Unlawful" means that which is not in accordance with law; "unreasonable" means that which is not in accordance with reason or that which has no factual foundation. *Johnson*, at 626-627.

{¶ 20} In an appeal to the Tenth District Court of Appeals from the Franklin County Court of Common Pleas, the Court of Appeals reviews the Court of Common Pleas' factual determinations for an abuse of discretion and reviews the legal questions de novo. *Am. Water Mgt. Servs., LLC v. Div. of Oil & Gas Resources Mgt.*, 2018-Ohio-3028, ¶ 21 (10th Dist.); *Wehr* at ¶ 14.

## IV. Discussion – Appeals by the Division and EAP

{¶ 21} The assignments of error presented in these two appeals overlap and can be grouped together for review and resolution as follows: (1) Eric Petroleum's standing under R.C. 1509.36 to institute an administrative appeal of the Chief's Order to the Commission; and (2) the Commission's authority to determine private property rights.

### A. Eric Petroleum's standing under R.C. 1509.36 to institute an appeal to the Oil and Gas Commission

{¶ 22} Both the Division (Assignment of Error 1) and EAP (Assignments of Error 1 and 2) challenge the trial court's determination that Eric Petroleum has standing to appeal the Chief's Order authorizing unitization of the drilling unit. These assignments of error challenge both the legal standard used to assess standing under R.C. 1509.36 and the application of the claimed interests here to that legal standard.

{¶ 23} It is well-established that a person or entity must establish standing—"that is, that [her or she] has been personally injured"—before seeking relief in court or by way of administrative appeal. *State ex rel. Martens v. Findlay Mun. Court*, 2024-Ohio-5667, ¶ 2; *Albany v. Butler*, 2018-Ohio-660, ¶ 7-11 (10th Dist.). The question of standing does not turn on the merits of the plaintiff's claims, but instead "depends on whether the plaintiffs have alleged some basis—grounded in common or statutory law—that entitles them to have a court hear their case." *Ohioans for Concealed Carry, Inc v. Columbus*, 2020-Ohio-6724, ¶ 20. "Standing ' " 'is not dispensed in gross,' " ' it must be demonstrated for each claim and each form of relief." *Id.* at ¶ 13, quoting *Preterm-Cleveland, Inc. v. Kasich*, 2018-Ohio-441, ¶ 30, quoting *Davis v. Federal Election Comm.,* 554 U.S. 724, 734 (2008), quoting *Lewis v. Casey*, 518 U.S. 343, 358, fn. 6 (1996).

{¶ 24} Standing may be grounded in traditional common law principles or granted by statute. *Ohioans for Concealed Carry*, 2020-Ohio-6724, at ¶ 12, 20. Because there is no inherent right to appeal an administrative decision, the standing to do so must be conferred by statute. *Midwest Fireworks Mfg. Co., Inc. v. Deerfield Twp. Bd. of Zoning Appeals*, 91 Ohio St.3d 174, 177 (2001). "When a statute provides for judicial review, ' "the inquiry as to standing must begin with a determination of whether the statute in question authorizes review at the behest of the plaintiff." ' " *Ohioans for Concealed Carry*, 2020-Ohio-6724, at ¶ 23, quoting *Middletown v. Ferguson*, 25 Ohio St.3d 71, 75-76 (1986), quoting *Sierra Club v. Morton*, 405 U.S. 727, 732 (1972).

{¶ 25} Here, Eric Petroleum sought to administratively appeal the Chief's Order under R.C. 1509.36, which states, "any person adversely affected by an order of the chief" may appeal to the Oil and Gas Commission. *See Kerns* at ¶ 6 ("The General Assembly has provided a statutory framework for appealing orders issued under R.C. Chapter 1509."). "Adversely affected" in this context is not defined by statute.

{¶ 26} The Commission and the trial court relied on different sections of the administrative code to analyze standing under R.C. 1509.36. The Commission appeared to rely at least in part on the definition of "interested party" in Adm.Code 1509-1-02(I), which defines an "interested party" as "any person having a pecuniary or proprietary interest directly affected by an appeal before the commission." The trial court determined the Commission erred in doing so, and neither party disputes that the definition of "interested

party" does not control whether Eric Petroleum is adversely affected by the Chief's Order to have standing to administratively appeal the Order at issue here.

{¶ 27} The trial court instead determined the definition of "appellant" under Adm.Code 1509-1-02(B)—"a person, claiming to be adversely affected by an order of the chief of the division of oil and gas resources management, who is applying or petitioning for review or relief, and who is requesting a hearing before the commission"—should set the parameters of standing. In the trial court's view, because Eric Petroleum is "claiming to be adversely affected" by the Chief's Order, it is an "appellant" and therefore has standing to challenge that Order and need not demonstrate an interest "directly affected" by the Order or present a real and current injury or threat thereof, as required by traditional principles limiting standing. The trial court cited to *Wehr* in support of this position.

{¶ 28} The legal framework established by the trial court to assess standing to institute an administrative appeal of a Chief's Order is at odds with the plain language of R.C. 1509.36 and cases assessing the same or similar phrase in determining standing to administratively appeal in comparable situations. At the outset, an analysis of an undefined statutory term should begin with its plain and ordinary meaning. *Rhodes v. New Philadelphia*, 2011-Ohio-3279, ¶ 17 ("If, as here, a term is not defined in the statute, it should be accorded its plain and ordinary meaning."). "[A]dversely" is ordinarily defined to mean "in a way that is bad or harmful" or "in an adverse manner," *i.e.* "acting against or in a contrary direction," "opposed to one's interests," or "opposite in position." (Merriam Webster Dictionary, https://www.merriam-webster.com/dictionary/adversely; https://www.merriam-webster.com/dictionary/ adverse, accessed 12/18/24.) "[A]ffect" in this context means "to produce an effect upon (someone or something)." (Merriam Webster Dictionary, https://www.merriam-webster.com/dictionary/affect#h1, accessed 12/18/24.)

{¶ 29} We decline to expand the plain and ordinary meaning of "adversely affected" to includes persons "claiming to be" adversely affected, as suggested by the trial court, and note the legislature in fact eliminated the phrase "claiming to be" from R.C. 1509.36. *Compare* R.C. 1509.36 prior to the 2010 amendment ("Any person *claiming to be aggrieved or* adversely affected by an order by the chief . . . may appeal to the oil and gas

commission") with R.C. 1509.36 after the 2010 amendment ("*Any person adversely affected* by an order by the chief . . . may appeal to the oil and gas commission[.]").

{¶ 30} Moreover, we disagree with the trial court that R.C. 1509.36 is not limited by traditional principles of standing. Only where a statute "clearly express[es] an intention to abrogate the common-law requirements" do traditional principles limiting standing not apply. *Cool v. Frenchko*, 2022-Ohio-3747, ¶ 28-29 (10th Dist.). Contrary to the trial court's position, nothing in R.C. 1509.36 clearly abrogates a person's duty to show a real and current injury, or threat thereof, to challenge the Chief's Order.

{¶ 31} In fact, the phrase "adversely affected" is widely used as a gatekeeper for standing to appeal administrative orders in similar realms, and courts do incorporate limitations based on traditional principles limiting standing. *See Stark-Tuscarawas-Wayne Joint Solid Waste Mgt. Dist. v. Republic Waste Servs. of Ohio II, LLC*, 2009-Ohio-2143, ¶ 23 (10th Dist.) (stating that "[i]n determining whether a party has been 'aggrieved or adversely affected' for purposes of [a] R.C. 3745.07 [appeal to the environmental review appeals commission], the principles of traditional standing analysis apply"); *Albany*, 2018-Ohio-660, at ¶ 7-11 (determining that under R.C. 3745.07, "[a]n order affects a person or entity if (1) it will cause injury in fact, economic or otherwise, and (2) the interest sought to be protected is within the realm of interests regulated or protected by the statute at issue" and explaining, "[t]he person or entity must show that he or she will suffer a specific injury from the challenged action and that the injury is likely to be redressed if the challenged action is invalidated. . . . The alleged injury must be concrete, rather than abstract or suspected. . . . An alleged injury may be actual or threatened, but a person or entity alleging a threatened injury must demonstrate a realistic danger arising from the challenged action."); *Helms v. Koncelik*, 2008-Ohio-5073, ¶ 31, 33 (10th Dist.) (determining the appellant did not have standing under R.C. 3745.07 where the appellant's concern about future county action that may or may not occur is "far too speculative" to establish standing and a "mere allegation that property value has been or will be diminished is not sufficient to sustain an appellant's burden to prove standing."); *Brady v. Youngstown State Univ.*, 2022-Ohio-353, ¶ 22 (10th Dist.) (determining "adversely affected" as used in R.C. 119.12(A) means the appellant's " ' "rights, privileges, benefits, or pecuniary interests are the subject of the administrative adjudication" ' " and he " ' "has been, or likely will be,

injured by the administrative order." ' "), quoting *Ward v. Ohio Dept. of Job & Family Servs.*, 2015-Ohio-5539, ¶ 23 (9th Dist.) and *Rose v. Ohio Dept. of Job & Family Servs.*, 2005-Ohio-1804, ¶ 11 (12th Dist.).

{¶ 32} *Wehr*, relied upon by the trial court to hold otherwise, is distinguishable and not persuasive on the issue here. *Wehr* did not address the issue of standing or whether the Wehrs were adversely affected by the Chief's Order. In that case, the Wehrs undisputedly owned land in the drilling unit and were "certainly persons affected" by the order; the *Wehr* court had no need to address the common law limitations to standing. *Id.* at ¶ 23. Furthermore, *Wehr* distinguishes between "persons adversely affected" by an order and "appellants," which undermines the trial court's stance that the definition of "appellant" equates to standing. *Id.* at ¶ 19-22. To adopt the trial court's view and employ the administrative definition of "appellant" to establish standing would permit every "person, claiming to be adversely affected by an order of the chief" to appeal—effectively eliminating limits on who can challenge a Chief's Order. Adm.Code 1509-1-02(B).

{¶ 33} Considering the plain and ordinary meaning of the phrase "adversely affected," the past tense employed by the legislature, the lack of language in R.C. 1509.36 clearly expressing an intention to abrogate the traditional standing limitations, and treatment of the phrase "adversely affected" in other administrative realms, we hold that to have standing to appeal a Chief's Order pursuant to R.C. 1509.36, a person must demonstrate he or she was "adversely affected" by showing the Order produced an effect that is harmful to his or her interest, *i.e.*, an actual injury or a realistic danger of injury arising from the challenged action that is not so remote as to be merely speculative.

{¶ 34} Viewed through this frame, Eric Petroleum has not demonstrated the Chief's Order in this case harmed its interest to warrant standing under R.C. 1509.36 to challenge the order at this time. Initially, Eric Petroleum's evolving claims of its affected interests cloud resolution of this issue. The primary interest Eric Petroleum asserted to support standing derives from its contractual option to acquire a working interest in the drilling unit, which Eric Petroleum cited in its notice of appeal to the Commission. Eric Petroleum admitted in its notice of appeal that the option to acquire a working interest is a matter at issue in the Columbiana County litigation. As indicated in a supplemental notice of authority, the Seventh District Court of Appeals sent the Columbiana County litigation to

arbitration.[1] As a result, Eric Petroleum essentially presented the Commission with a hypothetical, contingent future interest; we agree with the Commission that this asserted interest too speculative to permit Eric Petroleum to challenge the Chief's Order at this point. *See Midwest Fireworks Mfg. Co. v. Deerfield Twp. Bd. of Zoning Appeals*, 91 Ohio St.3d 174, 177 (2001) ("A future, contingent, or speculative interest is not sufficient to confer standing to appeal."); *Thomas v. Bldg. Dept. City of Barberton*, 2011-Ohio-4493, ¶ 7-10 (9th Dist.) (noting "appeals are not allowed for the purposes of settling abstract questions" and determining appellant did not demonstrate standing to appeal a determination of an administrative agency where it was not clear, based on the record and a potential foreclosure action, if the appellant held an interest in the property at issue, and if so, the scope of that interest).

{¶ 35} The bulk of Eric Petroleum's additional arguments in support of standing, for example the Order for EAP to record the interests and the asserted failure of the Order to protect correlative rights, appear to hinge on prevailing on the contractual and property interest claims it raised in the Columbiana County action. Furthermore, while Eric Petroleum retained the shallow rights, it neither alleged to the Commission nor subsequently explained on appeal how its shallow rights had been harmed by the Chief's Order. Rather, Eric Petroleum's notice of appeal concerned the deep rights and, in particular, its alleged entitlement to a reversion of leasehold interests based on a violation of a drilling provision and assertion that Chesapeake's assignment of interests to EAP is invalid. These circumstances distinguish the instant case from cited continuous-landowner cases, and Eric Petroleum has not otherwise demonstrated its shallow rights serve as a ground to challenge the Chief's Order on the facts of this case. *See Moore v. Middletown*, 2012-Ohio-3897, ¶ 23 (stating that "standing turns on the nature and source of the claim asserted"); *Ohioans for Concealed Carry*, 2020-Ohio-6724, at ¶ 13 (discussing that a party must have standing for each claim and relief requested: "standing is not dispensed in gross").

---

[1] *Eric Petro. Corp. v. Ascent Resources-Utica, LLC*, 2024-Ohio-5019 (7th Dist.) (affirming trial court judgment enforcing the arbitration clause of the ASA and, accordingly, granting Chesapeake and EAP's motion to compel arbitration and stay the matter pending arbitration).

{¶ 36} On this record, the Commission's ultimate determination that Eric Petroleum failed to demonstrate that it was adversely affected by the Chief's Order to support standing to administratively appeal under R.C. 1509.36 is warranted. The trial court should have affirmed that portion of the Commission's order and, as a result, the assignments of error raised by the Division and EAP challenging the trial court's determination on standing have merit. Accordingly, the Division's first assignment of error and EAP's first and second assignments of error are sustained.

### B. Commission's authority to determine private property rights when deciding whether a Chief's order is lawful and reasonable

{¶ 37} The Division in its second assignment of error contends that the trial court erred in determining "the Commission has the authority to determine private property rights when deciding whether a [C]hief's order is lawful and reasonable." (Commission's Brief at 5.) As explained further below, this assignment of error raises an issue that is, at best, premature.

{¶ 38} Initially, we note that the Commission's order to grant the Division and EAP's motions and to dismiss Eric Petroleum's appeal was not premised on its lack of authority to determine property interests but was instead solely based on finding "Eric Petroleum has not demonstrated sufficient interest of injury to establish standing." (Feb. 16, 2023 Comm. Order at 5.) The Commission's discussion of its lack of authority to determine property rights is raised within the "standing" context: the Commission appears to reference its lack of authority to adjudicate property rights as a preface to explaining why Eric Petroleum failed to meet its burden to demonstrate an interest to establish standing to administratively appeal the Chief's Order.

{¶ 39} In other words, the dispositive issue on appeal is whether Eric Petroleum demonstrated standing under R.C. 1509.36. The trial court and the parties agree that, at minimum, the Commission is entitled to assess property interests to determine whether a person holds interests that are adversely affected by a Chief's Order to trigger a right to administrative review. As explained in Section A of this decision, the Commission properly determined that Eric Petroleum failed to establish an interest adversely affected by the Chief's Order in this case to establish standing to trigger administrative review of the Chief's

Order. Should Eric Petroleum establish standing to challenge the Chief's Order in the future, the question of whether the Commission has authority to determine private property rights in deciding whether the Chief's Order is lawful and reasonable may arise, depending on the issues presented. Until then, that issue is not ripe for review. *See Martens*, 2024-Ohio-5667, at ¶ 9 (declining to decide the merits of a second issue where "the standing issue proves dispositive").

{¶ 40} In sum, the extent of the Commission's assessment of private property rights when deciding whether a Chief's Order is lawful and reasonable is without consequence at this juncture. Accordingly, the Division's second assignment of error is moot. *See State v. Gideon*, 2020-Ohio-6961, ¶ 26 ("[A]n assignment of error is moot when an appellant presents issues that are no longer live as a result of some other decision rendered by the appellate court."); pursuant to App.R. 12(A)(1)(c)(directing a court of appeals to decide each assignment of error and give written reasons for its decision "[u]nless an assignment of error is made moot by a ruling on another assignment of error").

## V. Discussion – Cross-Appeal by Eric Petroleum

{¶ 41} Eric Petroleum contends the trial court erred when it held that the Chief's Order did not impair its contract rights in violation of Ohio Constitution, Article II, Section 28, which states:

> The general assembly shall have no power to pass retroactive laws, or laws impairing the obligation of contracts; but may, by general laws, authorize courts to carry into effect, upon such terms as shall be just and equitable, the manifest intention of parties, and officers, by curing omissions, defects, and errors, in instruments and proceedings, arising out of their want of conformity with the laws of this state.

{¶ 42} The retroactivity clause, also revered to as the contracts clause, " 'prohibits the General Assembly from passing retroactive laws and protects vested rights from new legislative encroachments[.]' " *Longbottom v. Mercy Hosp. Clermont*, 2013-Ohio-4068, ¶ 21, quoting *Smith v. Smith*, 2006-Ohio-2419, ¶ 6. Generally speaking, "[t]he retroactivity clause nullifies those new laws that 'reach back and create new burdens, new duties, new obligations, or new liabilities not existing at the time [the statute becomes effective].' " *Bielat v. Bielat*, 87 Ohio St.3d 350, 353 (2000), quoting *Miller v. Hixson*, 64 Ohio St. 39,

51 (1901). *See Barnesville Edn. Assoc. OEA/NEA v. Barnesville Exempted Village School Dist. Bd. of Edn.*, 2007-Ohio-1109, ¶ 54 (7th Dist.) (explaining that "to claim the legislation impaired the obligation of contracts, the claimant must allege impairment of an existing contract by a subsequent law"; therefore, "[c]ontracts entered into on or after the effective date of the disputed statute are not impaired and are thus not entitled to the protection of the [retroactivity] [c]lause"). "Any prohibition against retroactive laws pertaining to legislative enactments applies to rules and regulations that administrative agencies promulgate." *Cosby v. Franklin Cty. Dept. of Job & Family Servs.*, 2007-Ohio-6641, ¶ 15 (10th Dist.).

{¶ 43} After finding Eric Petroleum had standing to pursue the R.C. 1509.36 appeal, the trial court in this case determined that, to the extent it had authority to determine constitutional questions pursuant to *Kerns*, Eric Petroleum's contentions regarding Article II, Section 28 of the Ohio Constitution failed. The trial court first found the Chief's Order was issued pursuant to R.C. 1509.28(D) through (G), which the Ohio legislature enacted in 1965. It reasoned that Eric Petroleum cited no law passed by the General Assembly or administrative code section, rule, or regulation that was promulgated by the Commission or Division that retroactively eliminated or encroached on Eric Petroleum's rights or an existing contract. The trial court declined to follow *American Energy - Utica, LLC v. Fuller*, 2018-Ohio-3250 (5th Dist.), a case that found unconstitutional retroactive application of R.C. 1509.28 to a 1981 oil and gas lease, since *Fuller* arrived at its holding by applying *Burtner-Morgan-Stephens Co. v. Wilson*, 63 Ohio St.3d 257 (1992) without accounting for the fact *Wilson* involved application of R.C. 1509.27(D) to an pre-existing 1949 oil and gas lease. As a secondary consideration, the court noted that the Chief's Order was issued pursuant to the state's authority to regulate oil and gas wells, which derives from the state's police power.

{¶ 44} Eric Petroleum contends the trial court was incorrect, since, similar to *Fuller*, the Chief's Order purported to eliminate Eric Petroleum's option to participate in the Dawson Lease under Section 5.7 of the ASA by failing to include Eric Petroleum as a working interest owner or otherwise reference its option to participate, requiring EAP to record the interests, including a release or waiver of certain rights or claims, and failing to protect its correlative rights, including imposing penalty that would in essence eliminate

payouts to non-consenting working interest owners. In Eric Petroleum's view, the Chief's Order purported to resolve in EAP's favor the pending property dispute that is being contested in the Columbiana County litigation, explaining that its participation rights are not at issue in that action but rather the litigation addresses its claims of a reversion under Section 5.9 and invalidation of an assignment in violation of Section 14.10. Eric Petroleum contends these relevant provisions of the Chief's Order are "rules" subject to constitutional protection under Ohio Constitution, Article II, Section 28 and "should have been treated no differently than if [the Order provisions comprised] a subsequently enacted law." (Eric Petroleum's Cross-Appeal Brief at 33, 35.) Finally, Eric Petroleum generally contends the Commission should have granted Eric Petroleum an evidentiary hearing to create a record to support its constitutional claim.

{¶ 45} Initially, as noted with respect to the Division's second assignment of error, the Commission's order granting the Division and EAP's motions and dismissing the attempt at an administrative appeal was based only on "Eric Petroleum's lack of standing"; the Commission's sole "finding" to support the dismissal is "Eric Petroleum has not demonstrated sufficient interest or injury to establish standing." (Feb. 16, 2023 Comm. Order at 5.) We have already determined the Commission was correct on this threshold issue, and Eric Petroleum has not explained how it has standing to pursue the Constitutional claim independently. "Standing is a threshold issue that must be resolved before an appeal to [an administrative body] may proceed." *Butler*, 2018-Ohio-660, at ¶ 8.

{¶ 46} Even if, for sake of argument, Eric Petroleum had standing to maintain a constitutional challenge to the Chief's Order, its contentions fail on the merits. As accurately stated by the trial court, the Chief's Order was issued pursuant to R.C. 1509.28— enacted in 1965—and could not retroactively impair the contract provisions raised by Eric Petroleum. Moreover, Eric Petroleum has not shown the specific provisions at issue in the Chief's Order equate to a more recent "law" or "rule" to trigger the constitutional protections of Ohio Constitution, Article II, Section 28.

{¶ 47} With these considerations in mind, Eric Petroleum has not met its burden to demonstrate error on appeal. *Watkins v. Holderman*, 2012-Ohio-1707, ¶ 11 (10th Dist.); *see also* App.R 16(A). Accordingly, Eric Petroleum's cross-assignment of error is overruled.

## VI. Conclusion

{¶ 48} For all these reasons, the Division and EAP established the trial court erred in determining Eric Petroleum has standing to appeal the Chief's Order to the Commission pursuant to R.C. 1509.36 and Eric Petroleum failed to demonstrate the trial court erred in dismissing its constitutional claim. Accordingly, the Division's first assignment of error and EAP's first and second assignments of error are sustained, rendering the Division's second assignment of error moot, and Eric Petroleum's cross-assignment of error is overruled. The judgments of the Franklin County Court of Common Pleas are affirmed in part and reversed in part.

*Judgments affirmed in part;*
*reversed in part.*

DORRIAN and BOGGS, JJ., concur.

—————————————