[Cite as *Eric Petroleum Corp. v. Vendel*, 2026-Ohio-1821.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Eric Petroleum Corp. et al., | : | |
| Appellees/<br>Cross-Appellants, | : | Nos. 24AP-272 |
| v. | : | and<br>24AP-275 |
| Eric Vendel, Chief, Division of Oil and<br>Gas Resources Management et al., | : | (C.P.C. No. 23CV-1832) |
| | : | (REGULAR CALENDAR) |
| Appellants/<br>Cross-Appellees. | : | |

D E C I S I O N

Rendered on May 19, 2026

**On brief:** *Dave* Yost, Attorney General, *Joseph Wambaugh*, and *Elizabeth M. VanNess*, for appellant/cross-appellee Eric Vendel, Chief, Division of Oil and Gas Resources Mangement. **Argued:** *Joseph Wambaugh*.

**On brief:** *Vorys, Sater, Seymour and Pease LLP*, *Timothy B. McGranor*, *Gregory D. Russell*, *Ilya Batikov*, and *Matthew D. Fazekas*, for appellant/cross-appellee EAP Ohio, LLC. **Argued:** *Timothy B. McGranor*.

**On brief:** *Black, McCuskey, Souers & Arbaugh, James M. Wherley, Jr.* and *Thomas A. Hill*, for appellees/cross-appellants Eric Petroleum Corporation and Eric Petroleum Utica, LLC. **Argued:** *James M. Wherley, Jr.*

ON APPLICATION FOR RECONSIDERATION

BEATTY BLUNT, J.

{¶ 1} Appellees/cross-appellants, Eric Petroleum Corp. and Eric Petroleum Utica, LLC (collectively "Eric Petroleum"), have filed an application for reconsideration of this court's decision in *Eric Petroleum Corp. v. Vendel*, 2025-Ohio-1238 (10th Dist.), pursuant to App.R. 26(A)(1). For the following reasons, we grant that application in part and deny it in part.

{¶ 2} App.R. 26(A)(1) operates as a mechanism to prevent miscarriages of justice that can arise when appellate courts make obvious errors or render unsupportable decisions under the law. *Norman v. Kellie Auto Sales, Inc.*, 2020-Ohio-6953, ¶ 7 (10th Dist.). When presented with an application for reconsideration filed pursuant to App.R. 26(A)(1), an appellate court must determine whether the application calls to the court's attention an obvious error in its decision or raises an issue that the court should have, but did not, fully consider. *WWSD, L.L.C. v. Woods*, 2023-Ohio-3174, ¶ 2 (10th Dist.); *Columbus v. Hodge*, 37 Ohio App.3d 68, 69 (10th Dist. 1987). An appellate court will not grant an application for reconsideration merely because a party disagrees with the logic or conclusions of the underlying decision. *Woods* at ¶ 2; *Hal v. State Dept. of Edn.*, 2020-Ohio-204, ¶ 1-2 (10th Dist.). Nor will an appellate court grant an application for reconsideration based on new arguments that a party has not previously raised. *Klickovich v. State Med. Bd.*, 2026-Ohio-31, ¶ 2 (10th Dist.).

{¶ 3} This appeal arose from the October 26, 2021 order issued by appellant/cross-appellee, Eric Vendel, the chief of the Division of Oil and Gas Resources Management of the Ohio Department of Natural Resources ("Division"), that granted the unitization application filed by appellant/cross-appellee, EAP Ohio, LLC ("EAP"). The unitization order combined multiple leased and unleased properties into a production unit, known as Dawson Unit South, and authorized EAP to drill three oil and gas wells in the unit. Eric Petroleum appealed the order to the Ohio Oil and Gas Commission ("Commission") pursuant to R.C. 1509.36.

{¶ 4} In its notice of appeal, Eric Petroleum alleged that it possessed certain oil and gas rights with regard to the property owned by Myron M. and Lilian M. Dawson, which was incorporated into Dawson Unit South. In 2008, Eric Petroleum entered into an oil and gas lease with the Dawsons. Approximately two years later, Eric Petroleum sold and assigned to Ohio Buckeye Energy, LLC (later merged out of existence into Chesapeake Explorations, LLC ("Chesapeake")) the "deep rights" under the Dawson lease. The sale was subject to an Asset Sale Agreement ("ASA"). Eric Petroleum retained "the shallow rights, certain participation rights, and a reversionary interest in the assigned acreage upon breach of the drilling commitment by Chesapeake." (Nov. 26, 2021 Notice of Appeal at 3.)

Chesapeake subsequently assigned its deep rights under the Dawson lease to EAP without Eric Petroleum's consent.

{¶ 5} Eric Petroleum claimed in the notice of appeal an entitlement to participate as a working interest owner in wells drilled that utilized acreage from the Dawson lease by virtue of Section 5.7 of the ASA. Quoted fully in our decision, Section 5.7 of the ASA states in relevant part:

> Option to Participate. Seller shall have the right and option, on a well by well basis, to participate for a ten percent (10%) working interest in any wells drilled on, or within a unit including the Properties . . . proportionately reduced to the percentage of the Properties acquired by Buyer hereunder, or pursuant to the terms herein, contribute to a unit, at actual cost, exclusive of any acreage costs attributable to the Properties; provided however, that Seller would forfeit future participation rights within a unit or contract area if Seller fails to participate in the initial well drilled upon such unit or contract area.

*Id.* at 4.

{¶ 6} In the notice of appeal, Eric Petroleum also claimed that because Chesapeake had breached the drilling commitment clause contained in Section 5.9 of the ASA, Eric Petroleum held a reversionary interest in the undeveloped Dawson acreage. Eric Petroleum alleged that Chesapeake breached Section 5.9 prior to assigning the Dawson lease to EAP by failing to drill the required number of wells per year and not tendering the undrilled well payment. Eric Petroleum disclosed that it had initiated litigation in Columbiana County to recover ownership of the undeveloped acreage, which, under the terms of the ASA, reverted to it when Chesapeake allegedly breached Section 5.9 of the ASA.

{¶ 7} The Columbiana County litigation also included the claim that Chesapeake breached Section 14.10 of the ASA when it sold and assigned the Dawson lease to EAP without Eric Petroleum's consent. As a result of that breach, Eric Petroleum sought to rescind the sale and assignment.

{¶ 8} The Commission dismissed Eric Petroleum's appeal of the unitization order, finding that Eric Petroleum lacked standing to assert the appeal. Eric Petroleum appealed to the trial court, which found the Commission's decision to dismiss was not lawful or reasonable. The Division and EAP then appealed the trial court's judgment to this court, arguing Eric Petroleum did not have standing. We concluded that, to have standing to

appeal the unitization order under R.C. 1509.36, Eric Petroleum had to demonstrate it "was 'adversely affected' by showing the [o]rder produced an effect that [was] harmful to [its] interest, i.e., an actual injury or a realistic danger of injury from the challenged action that [was] not so remote as to be merely speculative." *Eric Petroleum Corp.*, 2025-Ohio-1238, at ¶ 33 (10th Dist.).

{¶ 9} To determine whether Eric Petroleum had standing to appeal, we scrutinized the oil and gas interests Eric Petroleum claimed to have in the Dawson property. In relevant part, we stated:

> The primary interest Eric Petroleum asserted to support standing derives from its contractual option to acquire a working interest in the drilling unit, which Eric Petroleum cited in its notice of appeal to the Commission. Eric Petroleum admitted in its notice of appeal that the option to acquire a working interest is a matter at issue in the Columbiana County litigation. As indicated in a supplemental notice of authority, the Seventh District Court of Appeals sent the Columbiana County litigation to arbitration. As a result, Eric Petroleum essentially presented the Commission with a hypothetical, contingent future interest; we agree with the Commission that this asserted interest is too speculative to permit Eric Petroleum to challenge the [unitization] [o]rder at this point.

(Footnote omitted.) *Id.* at ¶ 34.

{¶ 10} In its application for reconsideration, Eric Petroleum argues that we made an obvious factual error in our analysis. It contends that it did not allege in its notice of appeal that its option to participate is at issue in the Columbiana County litigation. After reviewing the notice of appeal, we agree. The notice of appeal states that the "gravamen of the Columbiana County action" is "twofold," and consists of (1) the breach of Section 5.9 of the ASA (the drilling commitment clause) and (2) the breach of Section 14.10 of the ASA (the anti-assignment clause). (Notice of Appeal at 5.) Although the notice of appeal sets forth the text of Section 5.7, it does not identify Eric Petroleum's rights under the option to participate as a matter in dispute in the Columbiana County litigation. Moreover, Eric Petroleum has not varied from that position throughout this litigation.

{¶ 11} Our error is material because it means that Eric Petroleum has asserted a present property interest. While Eric Petroleum's reversionary interest depends on the outcome of the Columbiana County litigation (now in arbitration), Eric Petroleum currently

holds a "right and option" to participate as a working interest owner under Section 5.7 of the ASA. Given this obvious error, we must grant Eric Petroleum's application and reconsider Eric Petroleum's standing as it concerns the option to participate.

{¶ 12} As we stated above, to appeal an order under R.C. 1509.36, a party must prove the order adversely affected it. *Eric Petroleum Corp.* at ¶ 33. The question we must answer, therefore, is whether Eric Petroleum demonstrated that the unitization order adversely affects its option to participate. In other words, the record must show "an actual injury or realistic danger of injury" to Eric Petroleum's participatory rights under the ASA.[1] *Id.*

{¶ 13} Eric Petroleum's argument that the unitization order deprives it of its participatory rights begins with Eric Petroleum's contention that its option to participate constitutes a working interest. Eric Petroleum's standing argument, therefore, is premised on its claim that it currently owns a working interest in the Dawson property.

{¶ 14} The unitization order names all the entities that own working interests in the Dawson South Unit, but the order does not identify Eric Petroleum as a working interest owner. Eric Petroleum maintains that the terms of the unitization order, together with Eric Petroleum's omission as a working interest owner, injure it in two ways. First, it points to paragraph 12 of the unitization order, which required EAP to file a copy of the order in the Harrison and Jefferson Counties Recorders' offices. Eric Petroleum contends that the recording of the unitization order injures it by causing confusion as to whether it, in fact, possesses a working interest.

{¶ 15} Next, Eric Petroleum points to paragraph 14 of the order, which states that, "[e]xcept as specifically set forth in the terms of this order, nothing herein shall be construed as a release or waiver of any private right, obligation, duty, claim, or cause of action." (Oct. 26, 2021 Order by the Chief at 7.) Eric Petroleum argues that because the unitization order "specifically" names EAP and another party as only two working interest owners associated with the Dawson lease, the order "releases" and "waives" Eric Petroleum's right to a working interest. According to Eric Petroleum, paragraph 14 injures it because it unlawfully attributes ownership of the working interests to entities other than Eric Petroleum.

---

[1] In applying this standard, we decline to rely on the precedent Eric Petroleum cites, in which courts allowed holders of options for the purchase of real property to appeal administrative zoning orders under R.C. 2506.01 because the orders "directly affected" them. We are not applying the same standard in this case.

{¶ 16} As a general matter, an option is " 'an agreement by which a person binds himself to perform a certain act, usually to transfer property, for a stipulated price within a designated time, leaving it to the discretion of the person to whom the option is given to accept upon the terms specified.' " *In re Estate of De Saint-Rat*, 2008-Ohio-2109, ¶ 10 (12th Dist.), quoting Annotation, 71 A.L.R.3d 1201, 1208-1209, at § 4 (1976). Although an option binds the offeror to leave the offer to perform open for a specified period of time, the holder of the option is not required to exercise the option. *Kenney v. Chesapeake Appalachia, L.L.C.*, 2015-Ohio-1278, ¶ 16 (7th Dist.); *Cent. Funding, Inc. v. CompuServe Interactive Servs., Inc.*, 2003-Ohio-5037, ¶ 38 (10th Dist.). However, once the holder of the option exercises the option, a bilateral contract arises between the parties to perform in accordance with the option terms. *Cent. Funding, Inc.* at ¶ 38.

{¶ 17} Pursuant to Section 5.7 of the ASA, Eric Petroleum has a "right and option, on a well by well basis, to participate for a ten percent (10%) working interest in any wells drilled on, or within a unit including the" Dawson property. (Notice of Appeal at 4.) The unitization order defines a "working interest" as "an interest in oil and/or gas in the unit area by virtue of a lease, operating agreement, fee title, or otherwise, including a carried interest, the owner of which is obligated to pay, either in cash or out of production or otherwise a portion of the unit expense." (Order by the Chief at 2.)

{¶ 18} The parties do not dispute that Eric Petroleum has not exercised its option.[2] Eric Petroleum, therefore, does not have a working interest, but an option to participate for a working interest. We conclude that, under the unitization order's definition of working interest, Eric Petroleum's option does not constitute a working interest. Although Eric Petroleum may have an oil and/or gas interest in the Dawson South Unit by virtue of its option, Eric Petroleum has not established it is obligated to pay any portion of the unit expense. Eric Petroleum will only assume such an obligation if it exercises its option, choosing to participate in the well, and a contract to perform arises.

{¶ 19} Because Eric Petroleum lacks a working interest, it cannot establish that the unitization order actually injures it or poses any realistic danger of injury to it. First, the unitization order's failure to identify Eric Petroleum as a working interest owner does not

---

[2] Although the parties dispute why the option remains unexercised, that is not relevant to our analysis. We are only concerned with ascertaining the nature of Eric Petroleum's current interest in the Dawson property.

result in the "release" or "waiver" of Eric Petroleum's right and option to a working interest. The unitization order merely named the entities that owned working interests at the time the order was issued—a list that did not include Eric Petroleum. The order does not, "specifically" or otherwise, purport to prohibit unnamed entities from acquiring working interests in the future or to determine the outcome of the Columbiana County litigation. Thus, the order does not prevent Eric Petroleum from exercising its option.

{¶ 20} Second, the recording of the unitization order does not cloud the ownership of the working interests. Again, Eric Petroleum does not currently own a working interest. Therefore, the unitization order correctly omits Eric Petroleum as a working interest owner.

{¶ 21} In sum, we conclude that Eric Petroleum has not demonstrated the unitization order has adversely affected its option to participate. Eric Petroleum, therefore, lacked standing to appeal to the Commission on that basis. Accordingly, we come to the same conclusion as we did in the underlying decision, and we sustain the Division's first assignment of error, as well as EAP's first and second assignments of error.

{¶ 22} We next turn to the second ground Eric Petroleum raises in its application for reconsideration. Eric Petroleum contends that this court must reconsider our ruling sustaining EAP's second assignment of error, in which EAP sought reversal of the trial court's judgment on the basis that the Commission lacked subject-matter jurisdiction over Eric Petroleum's appeal. According to Eric Petroleum, we erroneously sustained the second assignment of error on a different basis, that Eric Petroleum lacked standing. Eric Petroleum argues that reconsideration is necessary because subject-matter jurisdiction and standing are distinct legal concepts. We disagree.

{¶ 23} Subject-matter jurisdiction is the statutory or constitutional authority to adjudicate a case. *Groveport Madison Local Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 2013-Ohio-4627, ¶ 25. Standing, on the other hand, often refers to a party's capacity to bring an action. *Id.* In a constitutionally created court, the lack of standing does not affect the court's subject-matter jurisdiction. *Bank of Am., N.A. v. Kuchta*, 2014-Ohio-4275, ¶ 23. However, "[s]tanding is jurisdictional in administrative appeals 'where parties must meet strict standing requirements in order to satisfy the threshold requirement for the administrative tribunal to obtain jurisdiction." *Groveport Madison Local Schools Bd. of Edn.* at ¶ 25, quoting *State ex rel. Tubbs Jones v. Suster*, 1998-Ohio-275, ¶ 19, fn. 4;

*accord Adams v. Harris*, 2024-Ohio-4640, ¶ 26-27 (in the context of an administrative appeal, holding that the cross-appellant did not waive a standing argument because standing is jurisdictional in character in administrative appeals and questions concerning subject-matter jurisdiction may be raised at any time); *Diley Ridge Med. Ctr. v. Fairfield Cty. Bd. of Revision*, 2014-Ohio-5030, ¶ 11 (same).

{¶ 24} The Commission is an administrative tribunal created by the General Assembly. R.C. 1509.35(A). When the General Assembly grants such a tribunal power to hear appeals, the statutory language determines the parameters of the tribunal's jurisdiction. *Chesapeake Exploration, L.L.C. v. Oil & Gas Comm.*, 2013-Ohio-224, ¶ 13. Here, the General Assembly has incorporated a standing requirement into the jurisdictional requirements for filing an appeal to the Commission. R.C. 1509.36. Therefore, for the Commission to acquire jurisdiction over an appeal, the appeal must be filed by a person with standing, i.e., a "person adversely affected by an order by the chief of the division of oil and gas resources management." *Id.*; *see Groveport Madison Local Schools Bd. of Edn.* at ¶ 25 (standing is jurisdictional when the General Assembly includes a standing requirement when setting forth an administrative tribunal's authority to review a prior determination).

{¶ 25} Because standing is jurisdictional in the context at issue in this case, we did not obviously err in sustaining EAP's second assignment of error. Accordingly, we deny Eric Petroleum's application that we reconsider our ruling on that assignment of error.

{¶ 26} For the foregoing reasons, we sustain Eric Petroleum's application for reconsideration in part and deny it in part. We sustain the Division's first assignment of error, and EAP's first and second assignments of error. Because the trial court erred in determining that Eric Petroleum had standing to appeal the unitization order to the Commission pursuant to R.C. 1509.36, we reverse the judgment of the Franklin County Court of Common Pleas in part.

*Application for reconsideration
sustained in part and denied in part;
judgment reversed in part.*

BOGGS, P.J. and DORRIAN, J., concur.

———————————